UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CAROLINE VANSICKLE, | CASE NO. 5:23-CV-2229-DAR |
| Plaintiff, | JUDGE DAVID A. RUIZ |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

INTRODUCTION

Plaintiff Caroline Vansickle challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB) and supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On November 17, 2023, pursuant to Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry of Nov. 17, 2023). Following review, and for the reasons stated below, I recommend the District Court **AFFIRM** the Commissioner's decision.

PROCEDURAL BACKGROUND

Ms. Vansickle filed for DIB and SSI on August 26, 2019, alleging a disability onset date of July 1, 2019. (Tr. 387, 394). The claims were denied initially and on reconsideration. (Tr. 253, 260, 268-69, 272-73). Ms. Vansickle then requested a hearing before an Administrative Law Judge. (Tr. 274-75). Ms. Vansickle (represented by counsel) and a vocational expert (VE) testified before

the ALJ on March 22, 2021. (Tr. 141-81). On April 6, 2021, the ALJ issued a written decision finding Ms. Vansickle not disabled. (Tr. 224-38).

On August 25, 2022, the Appeals Council vacated the decision and remanded the case. (Tr. 245-47). It determined the ALJ did not adequately evaluate the nature and severity of Ms. Vansickle's impairments and did not adequately evaluate the prior administrative medical findings of Dr. Haskins. (Tr. 245-46). It ordered the ALJ further consider the nature, severity, and limiting effects of Ms. Vansickle's impairments in accordance with 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), and 416.921 and evaluate the prior administrative medical findings in accordance with 20 C.F.R. §§ 404.1520c and 416.920c. (Tr. 246).

The ALJ held another administrative hearing on October 31, 2022, where Ms. Vansickle (represented by counsel) and a new VE testified. (Tr. 112-40). On November 9, 2022, the ALJ issued an unfavorable decision. (Tr. 49-66). The Appeals Council denied Ms. Vansickle's request for review on September 14, 2023, making the second hearing decision the final decision of the Commissioner. (Tr. 1-4; *see* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2)). Ms. Vansickle timely filed this action on November 16, 2023. (ECF #1).

FACTUAL BACKGROUND

## I.    Personal and Vocational Evidence

Ms. Vansickle was 49 years old on the alleged onset date, and 53 years old at the second hearing. (Tr. 121). She graduated from high school. (Tr. 153). She has worked as an inspector, hand packager, and a material handler. (Tr. 117, 173).

## II.     Relevant Medical Evidence

On December 9, 2019, Ms. Vansickle underwent a depression screening that indicated she suffered from moderately severe depression.[1] (Tr. 547). On January 6, 2020, her primary-care physician indicated she suffers from depression. (Tr. 543). Ms. Vansickle also reported experiencing suicidal thoughts over the holidays, but no longer experienced those thoughts and did not want to seek mental health treatment at that time. (*Id.*).

On March 2, 2020, her primary-care physician again indicated Ms. Vansickle suffered from depression. (Tr. 541). On March 6, she was involved in a serious head-on motor-vehicle accident where her son-in-law was critically injured and her long-time significant other was ejected from the vehicle and died. (Tr. 537). On March 12, at a follow-up after the accident, she again screened positive for depression. (Tr. 538).

At a visit on November 2, 2021, the depression screen was negative. (Tr. 765).

On May 2, 2022, Ms. Vansickle was screened positive for depression at her primary-care provider. (Tr. 875-76). She reported that for more than half the days to nearly every day, she had little interest or pleasure in doing things and felt down, depressed, or hopeless. (*Id.*). For more than half the days, she reported she had trouble falling or staying asleep or sleeping too much, lacked energy, a poor appetite, trouble concentrating, and moving or speaking unusually slow or fast. (*Id.*).

Ms. Vansickle reported to Kicos Wellness Center on September 23, 2022, to begin treatment for her depression and anxiety. (Tr. 883-93). She complained of major depression—

---

[1]     I have limited the summary of the medical evidence to Ms. Vansickle's mental-health diagnoses because the evidence about her physical impairments is not relevant to the issues implicated in her challenge to the Commissioner's denial of benefits.

3

reporting she felt down, sad, and low motivation—crying spells, and chronic anxiety. (Tr. 883). Her depression and anxiety would fluctuate. (Tr. 885). She sought possible medication management for her depression and anxiety. (*Id.*). In the two weeks leading up to the visit, Ms. Vansickle reported losing interest, feeling depressed, having trouble sleeping, and feeling tired more than half of the days. (Tr. 892). She also reported poor appetite in several days over the same period. (*Id.*). She denied having trouble concentrating or having suicidal thoughts or thoughts about self-harm. (*Id.*). She estimated those problems made it "very difficult" for her to work, take care of the home, or get along with others. (*Id.*). She was prescribed medication, encouraged to consider therapy, and set for a follow-up visit six weeks later. (Tr 887).

## III.    Medical Opinions

On November 9, 2018, Ms. Vansickle was referred for a clinical interview with state-agency psychological consultant Jennifer Haaga, Psy.D., in connection with her disability application. (Tr. 582). She was dressed in clean clothes, but her grooming and hygiene were disheveled. (Tr. 585). She reported she was "distant" with her family and her living situation was "stressful." (Tr. 583). Ms. Vansickle explained she was living with her daughters and her grandchildren. (*Id.*). She did not know her father and described him as an alcoholic. (*Id.*). She indicated she had an "okay" relationship with her mother and stepfather. (Tr. 582). She reported a "poor" relationship with her siblings. (Tr. 583). Though she did not appear to Dr. Haaga as responding to internal stimuli, Ms. Vansickle reported experiencing auditory and visual hallucinations. (Tr. 586).

Dr. Haaga diagnosed Ms. Vansickle with a persistent depressive disorder with anxious distress and intermittent major depressive episodes, PTSD, and other specific anxiety disorders and some symptoms of panic attacks and agoraphobia. (Tr. 587). Dr. Haaga noted during the interview Ms. Vansickle was tearful, irritated, and anxious and was anxious to leave. (Tr. 585).

4

Dr. Haaga opined that Ms. Vansickle may struggle to learn new tasks, particularly if she was anxious or overwhelmed. (Tr. 588). Dr. Haaga opined that Ms. Vansickle would likely struggle with maintaining sufficient focus and persistence in a competitive job situation. (*Id.*). Dr. Haaga explained that Ms. Vansickle had some interpersonal problems with supervisors and coworkers and presented as irritable and angered by others. (*Id.*). Dr. Haaga opined that Ms. Vansickle's interactions and responses to conflict and criticism would be negatively affected by her mental health conditions. (*Id.*).

In November 2020, state agency psychological consultant Kristen Haskins, Psy.D., reviewed Ms. Vansickle's record as part of the reconsideration of her benefits applications and evaluated her concentration, social, and adaption limitations. (Tr. 211-13, 220-22). Dr. Haskins opined Ms. Vansickle's concentration limitations restricted her to simple, repetitive tasks (*i.e.*, one-to-three steps) in a setting that does not demand a fast pace, where she can work away from others. (Tr. 212, 221). Dr. Haskins also noted Ms. Vansickle's social limitations constrained her from interacting with the public but allowed brief, superficial interaction with her coworkers and supervisors. (*Id.*). Dr. Haskins further noted Ms. Vansickle's adaptive limitations meant she required a work setting where there are well-defined goals, any major changes explained beforehand, and extra time to gradually implement changes to allow her to adjust to the new expectations. (Tr. 213, 221-22).

## IV.    Relevant Testimonial Evidence

At the first hearing, Ms. Vansickle testified her mental-health conditions tremendously impact her ability to work. (Tr. 164). She cannot be around people without experiencing anxiety and has trouble following instructions. (*Id.*). In the past, she would take medical leave from work when she felt her anxiety or temper would lead to a situation where she might lose her job. (Tr.

164-65). At her previous jobs, she would have verbal altercations with both coworkers and supervisors. (Tr. 165). Her anger and anxiety also caused stress in her family life. (Tr. 166). She also struggles to sleep, experiencing nightmares and flashbacks to a traumatic deadly motor-vehicle accident. (Tr. 167). She has issues regarding personal hygiene, sometimes going days without managing her hygiene or changing her clothes because of a limited amount of social activity. (Tr. 167). About four or five times a month, she will stay in bed the entire day. (Tr. 170). She also has trouble concentrating without intrusive thoughts, particularly about her motor-vehicle accident. (Tr. 170-71).[2]

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

---

[2]    I have omitted a summary of the VE's testimony at the administrative hearings because it is not relevant to the issues implicated in Ms. Vansickle's challenge to the Commissioner's denial of benefits.

4.     What is claimant's residual functional capacity and can claimant perform past relevant work?

5.     Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) and 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Vansickle had not engaged in substantial gainful activity since July 1, 2019. (Tr. 55). At Step Two, the ALJ identified the following severe impairments: lumbar degenerative disc disease, COPD, peripheral arterial disease, bilateral carpal tunnel syndrome, persistent depressive disorder, anxiety disorder, and post-traumatic stress disorder. (*Id.*). At Step Three, the ALJ found Ms. Vansickle does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Tr. 55-57).

The ALJ determined Ms. Vansickle's RFC as follows:

After careful consideration of the entire record, I find that [Ms. Vansickle] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that [Ms. Vansickle] may frequently handle and finger; [Ms. Vansickle] may occasionally balance, stoop, kneel, crouch, crawl, climb ramps and

stairs, but may never climb ladders, ropes, or scaffolds; [Ms. Vansickle] must avoid concentrated exposure to humidity, extremes of heat and cold, dust, odors, fumes and pulmonary irritants; [Ms. Vansickle] must avoid all exposure to unprotected heights and hazardous machinery; [Ms. Vansickle] is limited to the performance of simple, routine tasks and to the making of no more than simple, work-related decisions, conducted in a work setting that requires no more than occasional interaction with co-workers, supervisors, and the public, which setting is routine, in that it contemplates few changes.

(Tr. 57).

At Step Four, the ALJ found Ms. Vansickle cannot perform any of her past relevant work as an inspector, hand packager, or material handler. (Tr. 64-65). At Step Five, the ALJ determined jobs exist in significant numbers in the national economy that Ms. Vansickle can perform. (Tr. 65-66). Therefore, the ALJ found Ms. Vansickle was not disabled. (Tr. 66).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters,* 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the

Court cannot determine if it was discounted or merely overlooked."); *Hook v. Astrue*,

No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

DISCUSSION

Ms. Vansickle argues the ALJ did not properly evaluate Dr. Haskins's prior administrative

medical findings because the ALJ: (1) dismissed Dr. Haskins's assessment of Ms. Vansickle's social-

functioning limitations while only citing broadly to portions of the record without explanation of

how those portions of the record contradicted Ms. Haskins's conclusions, (2) cited a consultative

examination to contradict Dr. Haskins's conclusions when that examination was consistent with

Dr. Haskins's conclusions and misconstrued evidence about Ms. Vansickle's family and support

network, and (3) characterized the longitudinal record as describing Ms. Vansickle in "'pro-social'

terms" without explaining what that term meant. (ECF #8 at PageID 930-34). Ms. Vansickle also

notes that the record as a whole supports Dr. Haskins's conclusions that she faced significant

impairments from her mental-health conditions. (*Id.* at PageID 934). The Commissioner responds

that the ALJ properly analyzed the supportability and consistency of Dr. Haskins's findings and

explained how the findings were only partially persuasive after considering the record evidence.

(ECF #10 at PageID 938, 942-45).

Because Ms. Vansickle filed her application after March 27, 2017, prior administrative

medical findings are evaluated under the regulations found in 20 C.F.R. §§ 404.1520c and

416.920c. Under these revised regulations, the ALJ must articulate "how persuasive [he] find[s] all

of the medical opinions and all of the prior administrative medical findings in [the] case record."

*Id.* §§ 404.1520c(b), 416.920c(b). In determining the "persuasiveness" of a prior administrative

medical finding, the ALJ considers five factors: (1) supportability; (2) consistency; (3) relationship

10

with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors tending to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The ALJ must articulate the consideration given to the prior administrative medical finding in the record, grounded in the two "most important factors" of supportability and consistency. *Id.* §§ 404.1520c(a), 416.920c(a). As to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the prior administrative medical finding, the more persuasive the prior administrative medical finding will be. *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the more consistent a prior administrative medical finding is with the evidence from other medical and nonmedical sources, the more persuasive the prior administrative medical finding will be. *Id.* §§§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ must explain how she considered the factors of supportability and consistency, and "may, but [is] not required to" explain the remaining factors of relationship with the claimant, specialization, or other factors, absent the ALJ's finding that two opinions are "equally" persuasive. *See id.* §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3). That said, just because an ALJ does not specifically use the words "supportability" and "consistency" does not mean the ALJ failed to consider those factors. *Hardy v. Comm'r of Soc. Sec.*, No. 2:20-cv-4097, 2021 WL 4059310, at *2 (S.D. Ohio Sept. 7, 2021).

Here, the ALJ evaluated Dr. Haskins's findings as follows:

The state agency psychological consultant Carl Tishler, Ph.D., indicated that [Ms. Vansickle] had presented insufficient evidence with which to analyze [her] claim. The state agency psychological consultant, Kristen Haskins, Psy.D., indicated that [Ms. Vansickle] could perform simple, routine, one-to-three-step tasks in a setting away

11

from others, with no fast pace, involving only brief and superficial interaction with co-workers and supervisors, but no public interaction, where major changes could be explained and gradually implemented. Each of these doctors had the opportunity to review the evidence of record, to which each cited liberally in support of their conclusions, and each is well versed in the terminology and analytical framework employed in the disposition of these claims. The record shows a claimant with psychological disorders. These would be expected to, and the record supports does, impose at least episodic deficits of memory and focus. However, [Ms. Vansickle] is of, at worst, low average intelligence. She retains an average fund of knowledge, and reliably exhibits intact memory/cognitive function, with intact ability to reason in abstract fashion, adequate or intact concentration/cognitive function, driving a logical, goal-directed thought process. Provided [Ms. Vansickle] is restricted to simple, routine tasks, free of the need to mull complex decisions, she appears to have retained sufficient, residual, cognitive function to serve as 'backstop' against these periodic deficits from becoming fatal to competitive work. [Ms. Vansickle] presented in session with the consultative examiner as anxious and irritable, tearful, and sobbing intermittently. However, she has no known forensic history. She describes regular socialization with family and a supportive circle of both family and friends. She is reliably described in the evidence in pro-social terms. Her presentation at the consultative examiner appears to have been an outlier. Provided the frequency of [Ms. Vansickle]'s interaction with others is controlled, she appears to have retained sufficient, residual, social function to engage in competitive work. [Ms. Vansickle]'s disorder is expected to reduce her tolerance for frustrations or stress. However, [Ms. Vansickle] registered negative depression screenings in December 2020 and November 2021. [Ms. Vansickle] is reliably described in the record with fair-to-good insight and judgement, not given to impulsivity, thought to exhibit fair commonsense reasoning, and capable of living independently and making decisions about her future. She is entrusted, at least episodically, with the care of her granddaughter. Provided [Ms. Vansickle is limited to the performance of simple, routine, tasks, conducted free of the need to mull complex decisions, or to respond to constant changes, she appears to have retained sufficient, residual, adaptive function to engage in competitive work. The opinion of Dr. Haskins appears to have overstated [Ms. Vansickle]'s social, cognitive, and adaptive limitations, by comparison to the overall evidence of record. However, the opinion remains partially consistent with, and supported by, the overall evidence of record, and so is partially persuasive.

(Tr. 63-64) (citations omitted).

The foregoing demonstrates the ALJ applied the supportability factor to Dr. Haskins's prior administrative medical findings. The ALJ concluded the findings were well-supported with citations to the longitudinal record, writing: "[Dr. Haskins] had the opportunity to review the

evidence of record, to which [she] cited liberally in support of [her] conclusions, and each is well versed in the terminology and analytical framework employed in the disposition of these claims." (Tr. 63).

Ms. Vansickle's argument focuses on the ALJ's application of the consistency factor. First, Ms. Vansickle contends the ALJ did nothing more than cite evidence, did not explain how that evidence contradicted Dr. Haskins's findings, and thus did not build a logical bridge between the evidence and his conclusion that Dr. Haskins's findings were partially consistent. (ECF #8 at PageID 931). But the ALJ's analysis shows he did apply the consistency factor and explained how Dr. Haskins's findings were partially consistent with the record. For example, regarding Ms. Vansickle's cognitive limitations, the ALJ noted that while the record established Ms. Vansickle has depression and anxiety, the medical evidence described her reasoning, memory, and concentration are intact and adequate. (*See* Tr. 586 ("her ability to abstract was adequate"), 538 ("Memory (recent & remote) – Intact"), 548 (same), 596 (same), 764 (same), 866 ("Her thought content is normal. Her thought process is logical."), and 541 ("Mental Status – Alert . . . Attention and Concentration – Intact.")). The ALJ referenced those examinations to explain his two conclusions that Ms. Vansickle "retained sufficient, residual, cognitive function" to prevent her psychological disorders from "becoming fatal to competitive work" and that she has the cognitive capacity to engage in competitive work with certain limitations on the complexity of her tasks and the rate of changes in the workplace. (*See* Tr. 63-64). These conclusions are consistent with Dr. Haskins's findings. (Tr. 212-13, 221-22). Thus, the ALJ cited the evidence and explained how Dr. Haskins's assessed cognitive limitations were supported by the record. The ALJ's analysis follows the same pattern for social and adaptive limitations Dr. Haskins assessed.

Thus, the ALJ did build a logical bridge from the evidence he cited to how Ms. Vansickle retained sufficient residual cognitive, social, and adaptive functioning to be competitively employed. Consequently, I decline to order a remand on this basis.

Second, Ms. Vansickle argues the evidence the ALJ cited to conclude Dr. Haskins's findings were partially inconsistent does not contradict Dr. Haskins's findings when put in context. (ECF #8 at PageID 931). Specifically, Ms. Vansickle takes issue with the ALJ using Dr. Haaga's consultative examination to contradict Dr. Haskins's conclusions when Dr. Haaga's findings were consistent with Dr. Haskins's findings and misconstruing evidence about Ms. Vansickle's family and support network. (*Id.* at PageID 931-32).

The ALJ wrote of Ms. Vansickle, "she describes regular socialization with family and a supportive circle of both family and friends." (Tr. 63) (citations omitted). The ALJ cites two sources as evidence: an examination report stating she has "[s]upport persons: friends and family," (Tr. 884), and a passage from Dr. Haaga's opinion stating "she currently socializes with her daughters, her son-in-law, mother-in-law, and her sister-in-law. She stated that her social functioning has not declined in the last year." (Tr. 583). Ms. Vansickle argues that once those pieces of evidence are put into context, they do not contradict Dr. Haskins's findings that she could interact with others only superficially. (ECF #8 at PageID 934-35).

After a review of the record, the passages quoted by the ALJ do not provide the strongest support that Dr. Haskins overstated Ms. Vansickle's social limitations. A single line in an examination report that one has support persons does not imply much. Dr. Haaga's opinion is somewhat mixed on Ms. Vansickle's ability to socialize with her family and, by extension, at work. After reporting Ms. Vansickle socializes with her family, Dr. Haaga states Ms. Vansickle described

14

her living situation with her family as "stressful" and that she often "stay[s] in her room." (Tr. 583, 584). These passages are at best mixed regarding the extent of Ms. Vansickle's socializations with her family and whether she has a support network of friends and family. However, the ALJ has the duty to resolve such conflicts in the evidence. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). The ALJ did so here, finding the evidence supported some of the social limitations Dr. Haskins assessed, but not to the same extent. This Court cannot reverse the ALJ's decision on that basis even if it might have reached a different conclusion on the same evidence. *See Brotherwood v. Comm'r of Soc. Sec.*, No. 3:19-cv-1753-JZ, 2020 WL 5032024, at *19 (N.D. Ohio Aug. 5, 2020), *report and recommendation adopted*, No. 3:19 CV 1753, 2020 WL 5026531 (N.D. Ohio Aug. 25, 2020). Consequently, I decline to order a remand on this basis.

Third, Ms. Vansickle also challenges the ALJ's characterization that the record describes Ms. Vansickle in "'pro-social' terms" without explaining what that term meant. (ECF #8 at PageID 933-34). The ALJ wrote "[s]he is reliably described in the evidence in pro-social terms." (Tr. 63, *citing* Tr. 538, 703, 765, 875, 883). The ALJ used the phrase "pro-social terms" in discussing Ms. Vansickle's social limitations but did not explain what it meant to convey.[3] The ALJ cited pages of treatment notes as support for the observation but made no explanation of what the reader should find in those notes. While no court in the Sixth Circuit has expressly defined the

---

[3]     Though vacated by the Appeals Council, the ALJ's first decision offered more explanation of the phrase "pro-social" via examples:

> Typically, she presents in the record in "pro-social" fashion: as cooperative, as cooperative and appropriate with normal mood, affect, and good eye contact, with a normal affect, as pleasant and cooperative, with a normal and appropriate affect, as pleasant, or as calm and cooperative with good eye contact.

(Tr. 56 (citations omitted)). There is no similar explanation in the ALJ's second decision.

15

term, other courts in the Sixth Circuit have explained pro-social terms include being "cooperative, polite, good eye contact, and interactive." *See Dornan v. Comm'r of Soc. Sec.*, No. 1:22-cv-2244-JRA, 2023 WL 8789168, at *13 (N.D. Ohio Dec. 4, 2023), *report and recommendation adopted,* No. 1:22-cv-2244-JRA, 2023 WL 8780713 (N.D. Ohio Dec. 19, 2023); *see also Lucas on Behalf of M.B. v. Comm'r of Soc. Sec.*, No. 1:17-cv-373-JRK, 2018 WL 1484270, at *10 (N.D. Ohio Mar. 27, 2018) ("[Plaintiff] practiced prosocial behavior and did well and used good social skills and manners."). Both Ms. Vansickle and the Commissioner point out that those treatment notes contain such observations of her mood, affect, cooperation, and eye contact. (ECF #8 at PageID 933; ECF #10 at PageID 944). Although greater explanation could have been provided, I nevertheless conclude substantial evidence supports the ALJ's summary of the record. No purpose would be served by remanding for the ALJ to better explain this specific phrase. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 507 (6th Cir. 2006) (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

The ALJ properly evaluated the persuasiveness of Dr. Haskins's prior administrative medical findings and explained how the findings were supported by but not entirely consistent with the medical record. The ALJ's analysis, though imperfect, resolved the conflicts in the evidence and was supported by substantial evidence from examination reports and Dr. Haaga's findings. Thus, I decline to recommend remand on this basis.

CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I recommend the District Court **AFFIRM** the Commissioner's decision denying disability insurance benefits and supplemental security income.

Dated: August 20, 2024

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl,* 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green,* No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard,* 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega,* 924 F.3d 868, 878-79 (6th Cir. 2019).